ELLIS, Judge.
Ervin B. Weldon instituted suit for payment of a workmen’s compensation claim against the Southern Industries Company after that company discontinued his workmen’s compensation payments on July 8, 1954. Compensation for total and permanent disability is sought by plaintiff as a result of an injury sustained by him in his left knee while he was engaged in his employment by defendant company on September 24, 1951, subject to a credit for payments accrued.
It was alleged in plaintiff’s petition and admitted in the answer thereto that plaintiff has sustained an accident in the course and scope of his employment at a hazardous occupation for defendant company on or about September 24, 1951. Similarly, the proper compensation rate has been set at $30 per week and is not at issue. Neither is the amount of the compensation payments by the defendant company to the plaintiff in dispute, since it is agreed that compensation payments have been made from September 24, 1951 to July 8, 1954 (except for a short time during this period when plaintiff returned to work and received wages in lieu of compensation).
The defendant company contends that the injury to plaintiff’s knee is substantially cured and that plaintiff will regain the strength and use of his left leg if he will discard his crutch and return to light work. Alternatively, it contends that if plaintiff has any disability it results solely from plaintiff’s wilful refusal to cooperate with the attending physicians.
The trial court gave judgment for the plaintiff on April 5, 1955 and the defendant company has appealed suspensively and devolutively from same.
At the time of the accident, the plaintiff was employed as a bag machine operator. This employment, which involves moving rolls of paper up to six hundred pounds in weight, lifting and carrying a paste in a bucket from the container to the machines operated, lifting and carrying jugs of ink to the ink pans, pushing buggies loaded with the completed bags, and climbing fairly steep stairs to get boxes, may undoubtedly be classified as hard labor.
Upon sustaining the injury complained of, plaintiff reported to Dr. Charles L. Saint, who received' a monthly salary from defendant company and is in charge of the Elizabeth Hospital. Dr. Saint wrapped the injured knee with an ace bandage and instructed the plaintiff to keep off his feet. The plaintiff returned to the plant and the foreman instructed him to stay on and he would not have any heavy duties. After his return to work the plaintiff’s leg continued to pain and he again obtained permission to see Dr. Saint on October 4, 1951. At this time Dr. Saint immobilized plaintiff’s “left knee by the application of a plaster cast from his mid-thigh to his foot.” In approximately three weeks the cast was removed, but the condition had not improved and the plaintiff was referred to Dr. T. E. Banks of Alexandria, Louisiana, who specializes in orthopedic surgery. With plaintiff’s consent, Dr. Banks performed an operation which he deemed necessary under the circumstances, removing the lateral semilunar disc in the left knee, on November 9, 1951.
After a short post-operative rest, plaintiff returned to work on or about January 9, 1952 and worked, with lessened duties, until the first week in June. After repeated complaints he was sent to Dr. Banks on June 10, 1952, and surgery was again advised. It was postponed until June 27, 1952, due to severe respiratory infection, but at that time the medial miniscus, which was found to be torn transversely, was re *296 moved. Plaintiff acquiesced in this operation also.
From this time on, plaintiff felt the need of a crutch. For this reason, defendant company’s employees refused to let plaintiff return to work. It was proven on the trial of the case that plaintiff actually uses his crutch whenever he stands or walks, and its use is apparently not a ruse.
The plaintiff has constantly exercised his left leg by lifting weights of various sizes with it, by performing light chores around his home and farm, and by going hunting and fishing. These exercises are in line with the attending physician’s instructions and treatment, but it seems that they are unavailing. The concensus of the general practitioners and orthopedists called in as witnesses in this case is that there is considerable atrophy of the muscles in plaintiff’s left thigh and calf. In addition, an arthritic condition is present which originated with, or was aggravated by, the recent injury to the knee. It is generally conceded that there is some degree of crepitation under the patella and that both lateral and anterior instability of the knee joint are present. Dr. Saint, the company doctor, and Dr. Banks, who performed two operations to correct the injury in plaintiff’s knee, both admitted that plaintiff did have some disability. The third doctor called by defendant company, Dr. E. C. Campbell who is an orthopedist, estimated “an absolute minimum of twenty-five per cent disability of the left knee.” The four doctors called by the plaintiff all found disability to such a degree as would preclude plaintiff’s returning to his former employment which is classified as hard manual labor.
Many witnesses testified that the plaintiff was a hard, conscientious worker prior to his accident. In addition, most of the doctors considered that he was earnest in describing his subjective symptoms. It is apparent from the record that the plaintiff cooperated with the attending physicians to the best of his ability, consenting to two operations, returning to hard physical work after the first of these operations, exercising by lifting weights as directed and attempting to get as much exercise as possible under the circumstances. Only when he was ordered to walk without his crutch did he cease to cooperate. Considering the record as a whole, this refusal was merely due to the unreasonable degree of pain which he would suffer in so doing.
For the reasons assigned, the judgment appealed from is affirmed.