100 So.2d 902 (1958)
Leroy COINE, Plaintiff-Appellee,
v.
N. R. SMITH et al., Defendants-Appellants.
No. 4539.
Court of Appeal of Louisiana, First Circuit.
February 3, 1958.
Rehearing Denied March 17, 1958.
Writ of Certiorari Denied April 21, 1958.
*903 Morgan, Baker, Skeels, Middleton & Coleman, Shreveport, for appellants.
Wood & Jackson, Leesville, for appellee.
TATE, Judge.
Defendants, an employer and his compensation insurance carrier, devolutively appeal from judgment awarding workmen's compensation and medical expenses to an employee for total disability resulting from an accident in the course of his employment.
The chief matter urged upon appeal is that the District Court judgment should be amended so as to condition the employee's right to future compensation payments upon his acceptance of corrective surgery tendered by defendant.
While there is much merit to the suggestion by our brethren of the Orleans Court of Appeal that the courts are unable to require an employee to submit to corrective surgery as a condition precedent to receiving compensation in the absence of legislative authorization of such sanction, Patterson v. Cargo Services, Inc., 95 So.2d 49, 54, which is urged upon us by plaintiff-appellee as the applicable legal principle herein, the jurisprudence followed by this court "supports the principle that the courts may order compensation payments withheld when an employee unreasonably refuses to submit to surgery which will remove his disability," Borders v. Lumbermens Mut. Cas. Co., La.App. 1 Cir., 90 So.2d 409 at page 411. (Italics ours.)
In this last cited case, we approved a summary of the criteria as to whether an injured employee's refusal to submit operation is or is not unreasonable to be as follows, 90 So.2d 411:
"1. Can it be reasonably assumed that the operation will relieve the situation and permit the claimant to resume the type of work he was performing at the time of the accident?
"2. Will the operation submit the claimant to a minimum of danger and be in no sense dangerous to his life or be attended by no unusual risks and is it attended with but slight pain?
"3. Is there no serious disagreement among the surgeons as to the necessity for the operation or the type of operation to be performed, and the probability that the disability will be cured without recurrence?"
Plaintiff is a common laborer, 34 years of age, in good general health. The substantially preponderant medical testimony is to the effect that plaintiff is disabled by reason of a rupture or tear of the medial meniscus of the right knee (also denoted as the semi-lunar cartilage.) Two of the five physicians submitting an opinion as to the cause of the disability, however, felt that the cause thereof was the lesser injury of a torn tibial ligament. For purposes of this opinion, we believe it to be established that the cause of plaintiff's present disability is the former or more serious injury, which the evidence indicates to be permanently incapacitating and curable only by corrective surgery.
The chief question of the present appeal is whether the employee's refusal to accept the corrective surgery in question is unreasonable.
To reiterate what we stated in the Borders case, the question before us is not whether it would be more sensible for the *904 employee to submit to the corrective surgery tendered, and it is not whether the surgery in question would more probably than not cure or lessen the injured employee's disability. (And we may interpolate here that the predominant medical testimony in this record answers both of these questions in the affirmative.) The legal question before us is whether, judged by the criteria set forth above, the injured employee's refusal to accept the operation tendered is so unreasonable, under the circumstances of the case, as to permit an order relieving the defendants of their obligation to pay compensation otherwise due during the employee's disability.
Viewed in this light, we are certainly unable to hold that the refusal of the employee to submit to the tendered surgery was unreasonable when two of the five physicians (one of them an expert examining him on behalf of, and testifying for, defendants) advised him that such a surgical procedure was unnecessary. In testing the reasonability of this common laborer's refusal to submit to the surgery in question, it is immaterial that we do not accept the diagnoses upon which this medical advice was largely based, accepting instead the diagnoses of the other physicians of the more serious knee injury requiring such surgery for correction. For the question is not whether the doctors were mistaken in their advice that the employee did not need any operation, but whether in view of such advice his refusal to submit to same was unreasonable.
We prefer, however, to rest upon a broader basis our holding that the employee's refusal to accept such operation was not unreasonable. The evidence indicates that the operation in question is major surgery. (See for instance, Dr. McPherson's statement, Tr-115, that "any operation that invades a sterile privacy of a major joint is a major procedure.") It further indicates that there is "a real danger", although this is a "rare complication", that the nerve or artery at the back of the knee might be cut or injured, resulting in a total deadening of the lower leg and foot or even amputation thereof, Tr-112-3. A possibility is shown to exist of degenerative arthritis being caused or precipitated by the surgery in question (which totally disabling condition, we note, followed similar surgery in two recent cases appearing before this court, Hollier v. Travelers Ins. Co., 87 So. 2d 210 and Weldon v. Southern Industries Co., 85 So.2d 294, 295). We note also the testimony that frequently there is a good deal of pain in the knee immediately following such an operation.
Taking these factors into consideration, we are unable to say that the plaintiff's refusal to accept the tendered operation was unreasonable.
The Supreme Court refused to order similar surgery in Simmons v. Blair, 194 La. 672, 194 So. 585, and Bronson v. Harris Ice Cream Co., 150 La. 455, 90 So. 759, reversing the lower courts in both instances. Further, when recently our brethren of the Second Circuit ordered such operation in French v. Employers Mut. Liability Ins. Co., 70 So.2d 179, and Fredieu v. Mansfield Hardwood Lumber Co., 53 So.2d 170, writs of certiorari and review were granted by the Supreme Court in at least the former case, although we are informed by counsel that amicable settlement between the parties prevented the Supreme Court's final review of either case. In Patterson v. Cargo Services, Inc., 95 So.2d 49, 54, our brethren of the Orleans court refused to order such an operation.
Thus, we think the jurisprudence supports our determination that an employee's refusal to submit to the surgery in question is not so unreasonable as to subject him, unless he accepts a tender thereof, to the loss of his workmen's compensation benefits.
The remaining question concerns appellants' contention that the expert witness fees allowed by the trial court are excessive.
Under LSA-R.S. 13:3666, the compensation of expert witnesses is to be *905 fixed by the court "with reference to the value of the time employed and the degree of learning or skill required." Not only time actually spent testifying, but time spent on preparatory work therefor can be taken into consideration. Recreation and Park Commission, etc. v. Perkins, 231 La. 869, 93 So.2d 198; Succession of Moody, 229 La. 30, 85 So.2d 20. As the last case indicates, the fixing of expert witness fees is largely within the discretion of the trial court. Davis v. Reynolds, La.App. 2 Cir., 96 So.2d 368. See also LSA-R.S. 23:1317.
Taking these principles into consideration, we do not believe the District Court abused its discretion under the circumstances of this case in fixing at $75.00 the expert witness fee of each medical specialist who testified by deposition. In Succession of Moody, 229 La. 30, 85 So. 2d 20, our Supreme Court held that a trial court had not abused its discretion in awarding a $150 expert witness fee to each of three doctors testifying by deposition. Expert witness fees to physicians testifying in compensation suits of $100 each have been approved in several fairly recent cases, including, e.g.: O'Connor v. American Mut. Liability Ins. Co., La.App. Orleans, 87 So.2d 16; Bickham v. Lester J. Danner, Inc., La.App., Orleans, 86 So.2d 564.
Nor can we find that the District Court abused its discretion in its award of an expert witness fee of $50 to the physician whose written report summarizing his testimony was by joint stipulation admitted in lieu of a deposition. The preparatory time and study spent in collating and organizing the information and opinions expressed thereby could reasonably be deemed to be as great as required to testify in court, and certainly the effort taken in condensing and summarizing this testimony for convenient use in the determination of the matter could within the discretion of the trial court constituted as valuable a use of the doctor's time, both to the court and to the doctor, as his testifying by deposition. Cf., Bell v. Employers' Liability Assur. Corp., 1934 La.App. Orleans, 152 So. 766, syllabus 4.
Although we disagree with their contentions, defendants and their fair-minded counsel deserve commendation for their studious and humane effort to comply with the letter and spirit of such jurisprudence as Wade v. Calcasieu Paper Co., La.App. 1 Cir., 95 So.2d 725, and Duplechien v. States Exploration Co., La.App. 1 Cir., 94 So.2d 460, by continuing to pay compensation to the injured employee while pursuing an appellate right to question the reasonability of his failure to accept the tendered corrective surgery.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.