151 So.2d 499 (1962)
Peter J. THEUNISSEN, Plaintiff-Appellee,
v.
Patrick Victor GUIDRY et al., Defendants-Appellants.
No. 673.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1962.
On Rehearing December 10, 1962.
*500 Hall, Raggio & Farrar, by Edgar F. Barnett, Lake Charles, for defendant-appellant.
Knight & Knight, by Herschel N. Knight, Jennings, for plaintiff-appellee.
Before FRUGE, SAVOY, and CULPEPPER, JJ.
FRUGE, Judge.
This is a case involving an intersectional collision which occurred in the City of Jennings, Louisiana, on November 7, 1960. Judgment was rendered on May 16, 1962 with written reasons assigned in favor of the plaintiff, and the defendants, Patrick Guidry and his insurer, Traders and General Insurance Company, have appealed to this court.
In the early morning of November 7, 1960 plaintiff, Peter J. Theunissen, was driving a 1951 Plymouth automobile in a northerly direction on Doyle Street in the City of Jennings, Louisiana, and defendant, Patrick Guidry, was driving a 1955 Chevrolet automobile in an easterly direction on Howard Street. There are no traffic controls at the intersection of these two streets and neither has been designated as a right of way street, but as the vehicle of the plaintiff was traveling in a northerly direction to the right of Guidry's vehicle, which was traveling east, the former, under Section 9 of Ordinance No. 371 (City of Jennings, Louisiana), had the right of way. Therein the ordinance provides in part:
"* * * On all street intersections in the City of Jennings, all vehicles operating from the right shall have the right-of-way over those approaching from the left; * * *" (Joint exhibit P and D-1).
This ordinance is very similar to the State's general traffic control law as set forth in LSA-R.S. 32:237, subd. A, which provides:
"A. When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way. The driver of any vehicle traveling at an unlawful rate of speed or in an unlawful manner shall forfeit any right of way which he might otherwise have."
The record discloses that the defendant, prior to entering the intersection, was traveling at a speed of 20 to 25 miles per *501 hour and had slowed his vehicle to approximately 15 miles per hour as he approached the intersection. The record further establishes that the plaintiff, prior to entering the intersection was proceeding at a speed of 15 miles per hour. Neither was driving at an excessive rate of speed, the City Ordinance fixing the legal rate of speed in that locality at 25 miles per hour. (Section 17 of Ordinance No. 371, City of Jennings, Louisiana-Joint Exhibit P and D-1.)
It appears that the left front of plaintiff's automobile struck the right front door of the defendant's vehicle. In addition, the physical facts of the accident as evidenced by pictures of the intersection of Doyle and Howard Streets indicate that each driver had an unobstructed view of 66 feet as they approached the intersection. Furthermore, it appears from the point of impact of the two vehicles that the defendant entered the intersection before the plaintiff.
In his assignment of errors, learned counsel for the defendants contends that the lower court erred in (1) failing to find that defendant had preempted the intersection and thus acquired the right of way, and (2) failing to conclude that the plaintiff was negligent and that his negligence was at least one of the proximate causes of the accident.
With regard to the doctrine of preemption, this court in a recent decision, Fontenot v. Liberty Mutual Ins. Co., La.App. 3 Cir., 130 So.2d 462, stated:
"The jurisprudence of this State has been established to the effect that the prior entry of an intersection, without a reasonable expectation and opportunity of traversing it in safety and without obstructing the normal movement of traffic therein, does not constitute a pre-emption of the intersection. Also, before a motorist can successfully rely on pre-emption, he must show that he entered the intersection at a proper speed and sufficiently in advance of the car on the intersection street to permit him to proceed on his way without requiring an emergency stop by the other vehicle. * * *" (Citations omitted.)
The deposition of the defendant, Patrick Guidry, establishes that he first saw the plaintiff's vehicle when it was 5 or 5½ car lengths away from the intersection. Furthermore, the defendant stated that at this time his own vehicle was 3 or 4 car lengths away from the intersection. Certainly he could not reasonably expect to traverse the intersection without jeopardizing the safety of the plaintiff. Accordingly, we find that the defendant had not preempted the intersection and therefore had not acquired the right of way.
See also: Briscoe et al. v. State Farm Mutual Automobile Insurance Company et al., La.App. 2 Cir., 134 So.2d 128.
Learned counsel for the defendant urges that the trial court erred in not finding that the plaintiff was contributorily negligent and that such contributory negligence was the proximate cause of the accident herein sued upon. The record discloses that the plaintiff did not see the defendant's automobile until the moment of impact. As previously stated, each driver had an unobstructed view of some 66 feet as they approached the intersection. Thus, we must presume that each driver could or should have seen the other from this point to the intersection. It is elementary under the jurisprudence of this State that a driver of an automobile must maintain a proper lookout and that the failure to do so is negligence. Since the plaintiff did not see the defendant's vehicle, it is urged by counsel for the defendant that he was contributorily negligent and that this contributory negligence was the proximate cause of the accident.
The failure to maintain a proper lookout, although a violation of the law, is not necessarily regarded under our jurisprudence as a proximate or contributing *502 cause of every accident. Plaintiff cannot be denied recovery purely upon the basis that he failed to see what he could have and should have seen, unless it is established that such failure has a causal connection with the accident. Travelers Insurance Co. v. Great American Indemnity Company, La.App. 1 Cir., 113 So.2d 815.
In the case at bar, conceding that in contemplation of law plaintiff is charged with having seen what he could have seen, the following conclusion is inescapable. Plaintiff would have observed the defendant proceeding toward the intersection at a speed of 20 to 25 miles per hour. As the defendant approached the intersection, by his own testimony, he slowed his automobile to 15 miles per hour. (Tr. 22-23.) Certainly plaintiff could have assumed from the above described actions of the defendant that he, the defendant, was going to stop and yield the right of way to the traffic approaching on the right.
It is the opinion of this court that the plaintiff, under the circumstances of this case, had every reason to believe that the defendant was going to yield the right of way. Plaintiff knew that he had the right of way, and could assume that the defendant was cognizant of this rule and would act accordingly. Furthermore, had plaintiff been maintaining a proper lookout he would have seen nothing that would have caused a reasonably prudent driver to believe that the defendant was not going to yield the right of way. See Gautreaux v. Southern Farm Bureau Casualty Company, 83 So.2d 667, La.App. 1 Cir.; Commercial Credit Corporation v. Serpas, La.App. 1 Cir., 94 So.2d 83; Nooman v. London Guarantee & Accident Company, Ltd., La. App. 2 Cir., 128 So.2d 918.
We therefore conclude that at the time plaintiff should or could have discovered the peril that the defendant was not going to honor his superior right, plaintiff in the case at bar could not possibly have avoided the collision. Accordingly, we are of the opinion that whereas the plaintiff was negligent in not maintaining a proper lookout, such negligence was not the proximate cause of the accident herein sued upon.
Damages.
The trial court awarded the plaintiff judgment in the amount of $3,722.50, including the $100 stipulated to have been the property damage caused to plaintiff's automobile by the accident. In addition the trial court awarded expert witness fees for two medical experts in the sum of $25 each, which amounts were taxed as costs. Defendant-appellant protests that this award was excessive.
With regard to the $100 property damage to the automobile of the plaintiff, it is contended by counsel for the defendants that the plaintiff received $25 salvage value and that this amount should be deducted from the $100 that the parties stipulated. The stipulation of the plaintiff and defendant (Tr. 100.) shows that the parties agreed that the car at the date of loss would be valued at $100. In the absence of proof to the contrary it must be presumed that this amount excluded anything which might be obtained as salvage value. Accordingly we find the trial court was correct in awarding the full amount of $100 as stipulated damages to plaintiff's automobile.
Learned counsel for the defendants also protests the award of $750 for the fracture of the 7th and 8th ribs on the left side, and pain and suffering as result thereof. He calls to our attention that at no time did the plaintiff's physician state that plaintiff had a fracture of any ribs. A review of the record discloses that the attending physician, Dr. Bearden, who examined plaintiff immediately after the accident found a cartilage separation in the chest. Dr. Sabatier, who examined plaintiff almost one year later at the request of the defendant insurer, stated that he found two old healed fractures of the seventh and eighth ribs posteriorly on the left side. While there may be some doubt as to whether *503 plaintiff suffered two fractured ribs or a cartilage separation in the chest, we are of the opinion that an award of $750 for pain and suffering was not excessive and therefore affirm this award made by the lower court.
Counsel for the defendants also contends that the lower court's award of $2,500 for the aggravation of plaintiff's previously existing heart condition was excessive. In his statement (P-1), Dr. Bearden concluded:
"In summary, I considered this patient to have had previously existing cardiac disease which was aggravated by the mental strain, shock and pain of his injuries suffered in the automobile accident. I feel that his heart condition was not caused by the accident but was worsened by it. * * *"
Dr. Sabatier, who examined the plaintiff at the request of the defendant insurer, stated:
"It is my opinion that this man had heart disease prior to this accident and that shortly after this accident his heart disease became worse because he began to have this auricular fibrillation, which has persisted since the time of the accident. I do not think it is possible for me to state that the accident caused this change in his heart condition, but it certainly followed the accident immediately. It is possible for this complication of his heart disease to have developed without the accident and have been purely a coincidence; however, because of the time relationship of the accident and the complication of his heart disease, it is certainly possible and reasonable for the accident in some unknown way to have caused this complication." (D-3.)
In our opinion it was not manifest error for the District Judge to conclude that the accident itself coupled with the events caused thereby combined to aggravate a previously existing heart condition. Furthermore, we do not feel that the lower court's award of $2,500 for the aggravation of this condition was excessive. See Zito v. Schneller, La.App. 4 Cir., 133 So.2d 169; Fisher v. Norwich Union Fire Insurance Society, Limited, La.App. 1 Cir., 119 So.2d 562.
Lastly, counsel for the defendants protects the award of $25 to Drs. Bearden and Sabatier as fees of medical experts. The record discloses that neither was called to testify during the trial of this case. However, each doctor submitted reports which were introduced in evidence by stipulation. Under these circumstances we are of the opinion that the award of expert witness fees of $25 each was not excessive and therefore affirm the holding of the lower court in this respect. See Coine v. Smith, La.App., 100 So.2d 902.
For the reasons assigned, the judgment of the District Court therefore is affirmed; costs to be paid by Defendants-Appellants.
Affirmed.
CULPEPPER, Judge (dissenting in part).
I concur with the majority opinion except insofar as it awards to Dr. Bearden and Dr. Sabatier the sum of $25 each as expert medical witness fees.
The record shows that no testimony was actually taken at the trial of this matter. The entire case was submitted by the attorneys on depositions, stipulations and the written reports of these two doctors, which were introduced in evidence by agreement.
Dr. Bearden was plaintiff's treating physician. On September 28, 1961, he prepared for plaintiff's attorney a narrative summary of his treatment, ending with his expert opinion that plaintiff had recovered. This report, in letter form, was filed in evidence by plaintiff when the case was submitted on February 27, 1962. At the same time, it was stipulated that Dr. Bearden's charge to *504 plaintiff for services performed was the sum of $68.
Dr. Sabatier examined plaintiff on September 25, 1961 at the request of the defendant insurer. The next day he rendered to the insurer, in letter form, a report of his examination and his expert opinion. This report was filed in evidence by the defendant, pursuant to stipulation.
No stipulation whatever was made by the parties as to the payment of expert medical witness fees to these two doctors. However, the district court rendered judgment awarding an expert witness fee of $25 to each of them.
As to Dr. Bearden, this $25 fee is in addition to the sum of $68 which he charged the plaintiff. The $68 was awarded to plaintiff as special damages. The record does not show whether this charge of $68 was entirely for treatment or whether a portion was for services rendered in connection with the narrative summary and report for plaintiff's attorney. However, in the absence of any contrary showing, I think it must be assumed that the $68 charge covered all services performed by Dr. Bearden for plaintiff, including the preparation of the report.
Although the record is silent on the matter, the defendant insurer states in its brief in this court that it has already paid Dr. Sabatier for services rendered in connection with the examination and report which it requested. Defendant argues that therefore no additional compensation is due to Dr. Sabatier, he not having performed any other services as an expert medical witness.
The majority opinion is apparently based on Coine v. Smith, 100 So.2d 902 (1st Cir.App.1958, writ of certiorari denied) in which the court allowed an expert witness fee to a physician whose written report was admitted by stipulation, in lieu of his deposition. The court reasoned that the time and effort spent in preparing the report could be compensated by an expert witness fee even though the physician did not give a deposition or appear as a witness at the trial. I have no quarrel with Coine v. Smith. The reasoning therein proceeds logically from the case of Recreation and Park Commission of East Baton Rouge Parish v. Perkins, 231 La. 869, 93 So.2d 198, which interpreted LSA-R.S. 13:3666 (providing for additional compensation by the court to expert witnesses) to mean that an expert witness is entitled to a fee not only for the time spent appearing in court, but also for the time spent in preparing to testify as an expert in the case.
Applying Coine v. Smith, supra, to the instant case, Dr. Bearden and Dr. Sabatier are entitled to be paid for their preparatory time, even though they did not appear as witnesses, where the parties have stipulated that their reports could be filed in evidence in lieu of their testimony. However, the facts of this case show that both doctors have already been paid for this preparatory time.
If an additional fee of $25 is now awarded to them, it will mean that they are being paid twice for the same services. It is inconceivable to me that any amount should be allowed for attendance as a witness in court or for a deposition, when actually no such attendance was made.
For the reasons stated, I respectfully dissent from that portion of the majority opinion awarding expert medical witness fees to Dr. Bearden and Dr. Sabatier.

On Rehearing
En Banc.
PER CURIAM.
On the application of defendants we granted a rehearing on November 28, 1962, but limited to the portion of our decree of November 5, 1962 which affirmed the lower court's award of $25 each to Drs. Bearden and Sabatier as fees of medical experts. We were then advised in writing by counsel for plaintiff that, to avoid further *505 delays, his client wishes to waive his rights to said awards of expert witness fees. Thus, the question of the propriety of these awards is rendered moot.
For the reasons stated, therefore, we amend the decree rendered on November 5, 1962, rescinding and annulling that portion of our opinion and decree which affirmed the award of $25 each to Drs. Bearden and Sabatier as fees of expert medical witnesses. In all other respects, said decree remains the judgment of this court.
Original decree amended.