723 So.2d 987 (1998)
Larry VEAL
v.
TRANS GULF, INC.
No. 97-CA-2628.
Court of Appeal of Louisiana, Fourth Circuit.
September 23, 1998.
Order Clarifying Decision on Limited Grant of Rehearing November 18, 1998.
*988 Robert M. Hearin, Jr., Hearin & Warriner, L.L.C., New Orleans, LA, Attorney for Plaintiff-Appellee.
Jerome M. Volk, Jr., Wayne M. Aufrecht, Demartini, Leblanc, D'Aquila & Volk, Kenner, LA, Attorneys for Defendant-Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG and Judge CHARLES R. JONES and Judge MOON LANDRIEU.
PER CURIAM.
Defendant-appellant, Louisiana Insurance Guaranty Association (LIGA), appeals the judgment of the Worker's Compensation Judge ordering LIGA to pay all past chiropractic expenses of the Claimant-appellee from February 5, 1996, to the date of trial, and to pay $750 for all chiropractic treatment prior to February 5, 1996. After reviewing the record, we affirm the judgment.
On February 23, 1990, Claimant-appellee, Larry Veal, injured his back when he slipped on a piece of wood while working at Avondale Container Yard as an independent truck driver for Trans-Gulf, Inc. Mr. Veal received compensation payments and medical benefits from Alliance Casualty Company, (Alliance), until January 10, 1992, when Alliance went into liquidation. Alliance is Trans Gulf's worker's compensation carrier. After Alliance went into liquidation, LIGA became its successor.
In case no. 92-0739, the judge found Larry Veal's back injury on February 23, 1990, was an aggravation of a pre-existing lower back injury he had in 1983. However, the judge determined Mr. Veal was not temporarily totally disabled from this accident, and ordered Mr. Veal to receive supplemental earnings benefits in the weekly amount of $74.[1] The supplemental earnings benefits were to be paid from January 10, 1992, until December 1, 1993. December 1, 1993, is the date Mr. Veal decided to have back surgery recommended by his treating physician, Dr. George Murphy, Jr. The judgment further stated Mr. Veal was entitled to compensation benefits until he had recovered from the surgery. The judgment was signed on April 7, 1994, and all costs were assessed against LIGA.
On September 26, 1994, Mr. Veal filed a Motion to Examine Judgment Debtor and for Sanctions against LIGA under LSA-R.S. 23:1201(F)and 23:1333, because LIGA did not pay any compensation benefits to Mr. Veal, nor did it extend a financial guarantee for the back surgery ordered by the court on April 7, 1994. Following a hearing on Mr. Veals' motion, the judge assessed certain itemized costs against LIGA, but refused to sanction LIGA because LIGA was neither an employer nor an insurer as required by the statute. However, the judge stated "all [other] matters covered by the Judgment of April 7, 1994, remain[ed] in force and effect, except as hereinabove modified." This judgment was signed on December 19, 1994.
On May 1, 1995, Mr. Veal decided to postpone indefinitely having the recommended back surgery. LIGA stopped compensation payments which were due to Mr. Veal as of May 11, 1995. On November 16, 1995, Mr. Veal filed a Motion to Accelerate Worker's Compensation Benefits with the Office of Worker's Compensation. The initial hearing was scheduled for December 12, 1995; however, it was postponed to April 24, 1996, to allow all parties to complete discovery.
On February 5, 1996, LIGA was notified by telefax from Mr. Veal's counsel that Mr. Veal had been under chiropractic care. This communication explained that Mr. Veal "showed muscle spasms in the lumbar area with tenderness at the L-4" disc level. The communication also recommended that Mr. Veal return for examination "after LIGA approval."
*989 On April 1, 1996, Mr. Veal filed a motion styled "Motion (Re-Urged) to Accelerate Worker's Compensation Benefits." LIGA filed a motion for a continuance, and the April 24, 1996, hearing was re-set until August 29, 1996. Mr. Veal then moved for an expedited hearing on his re-urged motion. On May 7, 1996, the judge denied Mr. Veal's motion on the basis that the underlying subject matter was a "new dispute," requiring mandatory mediation.
On October 10, 1996, LIGA filed a motion styled "Motion to Terminate Worker's Compensation Benefits and to Not Pay for Chiropractic Treatment," which was assigned case no. 96-08251. Mr. Veal responded to LIGA's motion by filing a "Motion for Chiropractic Benefits" on December 12, 1996. Both cases were consolidated by order on April 23, 1997. The judge scheduled trial for the consolidated matters on June 18, 1997, but the trial was continued to July 11, 1997, for the purpose of taking additional testimony.
Once all testimony was taken, and after post-trial briefs had been filed by both parties, judgment was rendered on August 14, 1997. The judgment stated Mr. Veal was entitled to $750 for all chiropractic treatment by Dr. Bobby D. Newsom prior to February 5, 1996, as well as for all past chiropractic treatment from February 5, 1996, to the date of trial. LIGA was ordered to pay all travel expenses for each chiropractic treatment after February 5, 1996. LIGA was also assessed all costs of this proceeding including costs for depositions introduced into evidence, expert fees at their usual reasonable rate for reports, and for depositions and oral testimony. From this judgment, LIGA took a suspensive appeal.
In its first assignment of error, LIGA argues the judge committed manifest error in finding the claimant was entitled to past and future chiropractic treatment. Further, LIGA argues the judge was clearly wrong for ordering LIGA to pay for these services above the statutory amount given the fact that the evidence introduced at trial offered no causal link between the injury and the chiropractic treatment. More specifically, LIGA argues Mr. Veal was examined by Dr. Newsom nearly six years after his accident at Avondale and the complaint for which he sought chiropractic treatment was for tenderness in the cervical area. The complaint in the cervical area, LIGA argues, was unrelated to the 1990 accident which gave rise to this lawsuit. LIGA also suggests Mr. Veal did not prove by a preponderance of the evidence that his cervical complaint and the chiropractic treatment of the cervical area were work-related. Therefore, LIGA argues Mr. Veal was not entitled to any benefits for chiropractic treatment under the Louisiana Worker's Compensation Act. Additionally, LIGA argues Mr. Veal further aggravated his back injury by weight-lifting, doing strenuous sit-ups, and having subsequent accidents.
Moreover, LIGA argues the judgment signed on April 7, 1994, ordering LIGA to pay medical benefits pertained only to surgical expenses related to Mr. Veal's back surgery, and made no reference to chiropractic treatment. Thus, LIGA concludes Mr. Veal should not be allowed to have his chiropractic expenses included in the judgment of August 14, 1997, because he failed to establish a causal connection between his back injury and the chiropractic treatment he received from Dr. Newsom.
Mr. Veal argues the jurisprudence of this state has accepted "chiropractors" as health care providers under the Louisiana Worker's Compensation Act as provided in LSA-R.S. 23:1021(11). He also argues his decision to delay having the recommended back surgery was reasonable in light of the fact he could possibly die or receive a "poor or less-than-optimum" result following this surgery. In fact, Mr. Veal contends that had LIGA not delayed funding the surgery for over a year after the judge had authorized payment, he would have submitted to the surgery.
Mr. Veal further contends Dr. Murphy offered no other mode of treatment other than back surgery, and once Mr. Veal decided to dismiss the prospect of surgery, LIGA immediately discontinued his benefits without seeking to have the April 7, 1994, judgment modified. Mr. Veal also argues LIGA did not offer any evidence to show the treatment he received was unnecessary or not beneficial to his claim. Therefore, Mr. Veal *990 concludes this Court should not disturb the judgment rendered on August 14, 1997. We agree.
Mr. Veal's statement that the Louisiana Worker's Compensation Act has defined chiropractors as "health care providers" is correct. See LSA-R.S. 23:1021(11). Courts have also pronounced the credibility of chiropractors in the area of worker's compensation.
We recognize the legality of chiropractic treatment in this state, therefore the defendants must pay for chiropractic treatment which [plaintiff] engaged to try to relieve his pain in the interim between the accident and the surgery. Martin v. H.B. Zachry Co., 424 So.2d 1002, 1008 (La.1982). (Emphasis ours).
However, courts have also found that chiropractic treatment must be related to the disability at issue and beneficial to the claimant's welfare. Employers are responsible for all necessary medical and non-medical treatment to an employee injured in a work-related injury, and this treatment includes expenses for chiropractic treatment that is both beneficial and necessary. Tate v. L & A Contracting, 26,110 (La.App. 2 Cir. 9/21/94), 643 So.2d 263, writ denied, 94-2834 (La.1/27/95), 649 So.2d 385; Lynn v. Berg Mechanical, Inc., 582 So.2d 902, 912 (La. App. 2 Cir.1991).
In the case subjudice, LIGA does not dispute the status of chiropractors as health care providers under the Act. However, LIGA does contend the judge erred in finding a causal link between services provided by Dr. Newsom and the injury sustained by Mr. Veal on February 23, 1990. Even if the chiropractic services were somehow related to the 1990 accident, LIGA argues such treatment was neither necessary nor beneficial to Mr. Veal.
Dr. Bobby D. Newsom, a licensed chiropractor in this state since 1983, testified by deposition that Mr. Veal first came to his office at United Chiropractic Clinic in 1990, responding to a promotional ad offering three, free consultation visits with potential clients. During the sessions with Mr. Veal, Dr. Newsom testified Mr. Veal disclosed to him problems he was having with his back. Dr. Newsom also testified he interviewed Mr. Veal longer than usual because of his back complaint. Dr. Newsom went on to say Mr. Veal returned to him in November, 1995, to get a second opinion as to whether he should undergo back surgery recommended by Dr. Murphy. Dr. Newsom testified it is not part of his practice to make such recommendations; however, he did examine Mr. Veal's neck and recorded his complaints in his notes.[2] Though Mr. Veal made a complaint about pain in the cervical area, Dr. Newsom testified Mr. Veal's primary complaint has "always been a low back complaint."
To further explain the correlation between Mr. Veal's neck complaint and his back injury in 1990, Dr. Newsom testified Mr. Veal's hip flexors[3] were weak, and when upper cervical manipulation was conducted, the hip flexors cleared the lumbar weakness.
Dr. Newsom further testified that based upon his clinical experience, and his review of Mr. Veal's reports, films and other documentation, it was his professional opinion that Mr. Veal's cervical complaint was related to the accident which took place on February 23, 1990. We note that LIGA did not present any contradictory testimony to refute Dr. Newsom's opinion. Therefore, Dr. Newsom's chiropractic treatment of Mr. Veal was work-related, and supported by the record.
Secondly, LIGA argues the services provided by Dr. Newsom were not necessary or beneficial to Mr. Veal because such treatment could not prevent the need for back surgery.
*991 Mr. Veal argues the treatment he was given by Dr. Newsom did not cure his back problem, but did relieve his pain. Following his sessions with Dr. Newsom, Mr. Veal argues he did not have to schedule regular chiropractic visits and he was able to do some of the basic exercises he once did before the accident. Mr. Veal further argues it was LIGA's delay in scheduling surgery which prompted him to seek alternative treatment from Dr. Newsom. Therefore, Mr. Veal claims his chiropractic treatment was both necessary and beneficial because it relieved his pain without surgery. We agree.
An employee is entitled to treatment which not only cures his work related injuries, but he is also entitled to palliative care that relieves his pain. Ferrier v. Jordache-Ditto's, 94-1317, 94-1318 (La.App. 3 Cir. 5/17/95), 662 So.2d 14, writ denied, 95-2865 (La.2/2/96), 666 So.2d 1100.
The medical reports entered into evidence indicate Mr. Veal had an accident in an 18-wheeler in 1983, whereby he sustained damage to his right knee, along with cervical and lumbar strain. Mr. Veal then aggravated the injury to his back and neck after a rear-end collision in an automobile in 1987. Following the 1987 accident, Mr. Veal was given some muscle relaxers and pain medication by Dr. Murphy, but surgery was never discussed. Despite Mr. Veal's consistent pain in his back, Dr. Murphy noted Mr. Veal was improving, and recommended that Mr. Veal return to work. Dr. Murphy also recommended Mr. Veal do stretching exercises to increase his muscle strength.
In his treatment of Mr. Veal, Dr. Murphy discovered Mr. Veal had a herniated disc resulting from the 1990 accident at Avondale. The disc was pressuring a nerve root in his back and causing severe back and right leg pain. Dr. Murphy recommended to Mr. Veal a lumbar laminotomy discectomy to correct this problem. Though the doctor consistently recommended this surgery to Mr. Veal to ease the pain, Dr. Murphy testified Mr. Veal strenuously resisted having surgery. Furthermore, Dr. Murphy testified he did not prescribe any other forms of treatment for Mr. Veal upon realizing the patient would not submit to surgery.
Dr. Newsom, on the other hand, testified his chiropractic treatment was in fact helping Mr. Veal's condition because the patient did not feel the need to return for more treatment following one of his sessions. Dr. Newson also testified Mr. Veal was able to reduce the daily amount of medication he was taking because the pain in his back was subsiding. In fact, Dr. Newsom testified when Mr. Veal would began feeling better he would start lifting weights and doing various exercises. However, Dr. Newsom later recommended Mr. Veal tailor his exercises so he would not further aggravate his present back condition and increase the weakness in his legs.
At trial, Mr. Veal testified he was very apprehensive about having back surgery because he was told by Dr. Murphy that the surgery required being under general anesthesia. He was further concerned about signing a consent form which advised him of the possibility of death from this procedure. However, Mr. Veal testified he was willing to overlook his fears about the surgery because of the persistent pain in his back.
Mr. Veal further testified he dismissed the surgery indefinitely because his fears about the negative results of surgery had resurfaced when LIGA delayed setting up the surgery. Mr. Veal testified he then informed Dr. Murphy of his desire to seek a second opinion from Dr. Newsom; however, Mr. Veal denied Dr. Murphy said such treatment was not beneficial. Mr. Veal's testimony also corroborated the testimony of Dr. Newsom concerning the positive results of chiropractic treatment on his back pain, and Mr. Veal later testified he intended to remain under Dr. Newsom's care.
It appears from the record that Mr. Veal substantially benefited from the chiropractic services offered by Dr. Newsom. No other medical services provided to this claimant seemed to help relieve or cure his pain, and it was reasonable for Mr. Veal to seek alternative treatment considering the initial treatment was not helping. Thus, we cannot say the judge was clearly wrong in finding the chiropractic services offered by Dr. Newsom were necessary, reasonable, and beneficial in light of the circumstances faced by the plaintiff in this case.
*992 Thirdly, LIGA argues Mr. Veal arbitrarily refused to have back surgery recommended by Dr. Murphy, and is therefore not entitled to receive any further compensation.
In order to determine the reasonableness of Mr. Veal's decision to forego back surgery, we look to the principles outlined in Coine v. Smith, 100 So.2d 902 (La.App. 1 Cir.1958), to determine whether the claimant's refusal was warranted. See also, Borders v. Lumbermens Mutual Casualty Co., 90 So.2d 409 (La.App. 1 Cir.1956), DePaul v. Every, 96-39 (La.App. 5 Cir. 8/28/96), 680 So.2d 108, 113, writ denied, 96-2776 (La.1/6/97), 685 So.2d 114. Though the claimant cannot be forced to submit to surgery, his compensation may be jeopardized if he unreasonably refuses. Bass v. Service Pipe Trucking Company, Inc. 289 So.2d 78 (La.1974). (Emphasis ours).
In determining whether Mr. Veal's refusal of the surgery was unreasonable, we look to the factors outlined in Coine:
1. Can it be reasonably assumed that the operation will relieve the situation and permit the claimant to resume the type of work he was performing at the time of the accident?
2. Will the operation submit the claimant to a minimum of danger and be in no sense dangerous to his life or be attended by no unusual risks and is it attended with but slight pain?
3. Is there no serious disagreement among the surgeons as to the necessity for the operation or the type of operation to be performed, and the probability that the disability will be cured without recurrence?
According to Dr. Murphy's testimony, Mr. Veal's condition would likely improve by having this surgery, but the extent of this improvement was questionable. Dr. Murphy also testified he would not authorize Mr. Veal to return to work as a truck driver because he has a 10% to 20% permanent disability. Dr. Murphy further testified he would place physical restrictions on Mr. Veal, and these restrictions would not change regardless of whether Mr. Veal decided to have the surgery or not. Additionally, Dr. Murphy testified he could not say with any degree of certainty the back surgery would in fact cure or prevent the recurrence of pain in Mr. Veal's back. Dr. Murphy offered no guarantees, even though this was the first time back surgery was recommended for Mr. Veal since he first injured his back in 1983.
Because LIGA did not offer any expert testimony to establish whether Mr. Veal would successfully recover from surgery and return to work, it was reasonable for the judge to find it is more probable than not Mr. Veal would not be able to return to work as a truck driver even if he consented to the surgery.
As it relates to the second element in Coine, this Court has previously stated the amount of danger attended by surgery under general anesthesia is not sufficient enough to warrant a claimant's refusal of surgery because "the risk of danger through the use of a general anesthesia is not so substantial as to excuse a claimant's refusal to undergo surgery." Hamilton v. New Amsterdam Casualty Co., 208 So.2d 158, 161 (La.App. 4 Cir.1968). We distinguish Hamilton from the case subjudice because the corrective surgery in Hamilton dealt with amputating the tip of a claimant's right index finger as opposed to back surgery. See Hamilton, supra.
Dr. Murphy diagnosed Mr. Veal with degenerative disc disease in the areas of L4-L5 and L5-S1, and he gave extensive detail on how Mr. Veal's condition had worsened since his first accident in 1983. The records indicate that once surgery was ordered by the judge, LIGA delayed preparing the proper paperwork to have this surgery scheduled despite the fact Mr. Veal was experiencing pain. Moreover, when Mr. Veal refused to submit to the surgery, LIGA immediately discontinued all benefits. LIGA argues Mr. Veal was arbitrary in his decision to forego surgery; however, LIGA's delay in scheduling this surgery may have prolonged pain in Mr. Veal's back. Without any medical testimony to show Mr. Veal's subsequent refusal to have surgery would undermine his recovery and damage his chances of returning to work as a truck driver, we cannot say the judge committed manifest error by authorizing the claimant to continue chiropractic treatment.
*993 In the alternative, LIGA argues plaintiff aggravated his condition by participating in a weight-lifting program and doing a strenuous form of sit-ups called "crunches." Mr. Veal testified that after seeing Dr. Newsom, he began to feel better and wanted to do some weight lifting and exercises in order to stay in shape. He also testified the weights he used were less than five pounds, and the exercises were not done on a regular basis. Mr. Veal further testified he stopped doing such exercises after Dr. Newsom informed him that he could weaken the muscles in his back and legs. Thus, LIGA's argument that Mr. Veal somehow aggravated or contributed to his pain from the 1990 accident by weight-lifting and by doing sit-ups is without merit.
We pretermit any further discussion of the third element in Coine since LIGA failed to introduce any expert testimony to support the probability that the recommended back surgery would cure his disability or prevent it from recurring.
Lastly, LIGA argues the trial court erred in ordering LIGA to pay for past and future chiropractic treatment. This assignment of error is also without merit.
LSA-R.S. 23:1142(B) provides that a health care provider may not incur more than $750 in nonemergency diagnostic testing or treatment unless the health care provider had the mutual consent of the payor (i.e. employer or worker's compensation carrier) and the employee.
The judge ordered LIGA to pay for all past chiropractic treatment by Dr. Newsom from February 5, 1996, to the date of trial; and to pay $750 for all chiropractic treatment prior to February 5, 1996. However, according to Section E of the above statute, consent is not required to exceed the statutory amount of $750 if the payor has denied the employee's injury is compensable under the Louisiana Worker's Compensation Act. See Ball v. Dawsey Corp. 95-669 (La.App. 5 Cir. 11/28/95), 665 So.2d 566.
LIGA was informed on February 5, 1996, by telefax that Mr. Veal had decided to undergo chiropractic treatment for his back complaint. However, on October 10, 1996, LIGA filed a Motion to Terminate Worker's Compensation Benefits and to Not Pay for Chiropractic Treatment. In its motion, LIGA argued Dr. Newsom's chiropractic charges from February 5, 1996, to the date of trial totalled $940.70, and it argued Mr. Veal was not entitled to chiropractic treatment because the treatment was unwarranted since Mr. Veal "suddenly" decided to dismiss the surgery. LIGA also argued that, because of Mr. Veal's decision not to have back surgery, all compensation previously awarded under the Worker's Compensation statute should be terminated.
The record supports the conclusion that LIGA's actions may be interpreted as a denial under LSA-R.S. 23:1142(E), because: (1) LIGA refused to timely finance the back surgery; (2) LIGA terminated Mr. Veal's eligibility for compensation benefits after Mr. Veal indefinitely postponed back surgery; and (3) LIGA subsequently refused to pay for any chiropractic expenses incurred by Mr. Veal after it was notified of Mr. Veal's decision to seek chiropractic care. Therefore, consent between LIGA and Mr. Veal for nonemergency expenses above $750 was not needed in order for the judge to assess these chiropractic expenses against LIGA.
The judge further ordered LIGA to pay approximately $750 for all chiropractic treatment to claimant prior to February 5, 1996. The judge recognized LIGA did not have formal notice of chiropractic treatment prior February 5, 1996; therefore, the judge only awarded the statutory maximum for chiropractic treatment incurred before LIGA was notified. Thus, the judge was not clearly wrong in awarding $750 to Mr. Veal for past chiropractic treatment.

DECREE
For the foregoing reasons, we affirm the judgment finding Mr. Veal was entitled to compensation for all chiropractic treatment from February 5, 1996, until the date of trial; we affirm the judgment awarding $750 for all chiropractic treatment to Mr. Veal prior to February 5, 1996; and we affirm the judgment awarding Mr. Veal travel expenses for all chiropractic treatment after February 5, 1996. Finally, we affirm the judgment assessing all costs to LIGA.
AFFIRMED.

*994 ON APPLICATION FOR REHEARING
Petitioner's application for rehearing is granted in part for the sole purpose of clarifying our original decree that was issued by this Court on September 23, 1998. In the original opinion, we failed to emphasize that we affirm the trial court's judgment as to future as well as past chiropractic treatment.
Accordingly, we hereby amend our original decree to affirm the trial court's judgment awarding Larry Veal future chiropractic treatment by Dr. Bobby D. Newsom. The remainder of petitioner's application is denied.
NOTES
[1] The original compensation rate was $129.09 per week, but $53.09 was deducted by the judge as a credit against the reimbursement due LIGA for $14,500.10 in overpayment made by Alliance.
[2] LIGA also questioned Dr. Newsom at length concerning the abbreviated information Dr. Newsom included in his notes about Mr. Veal's cervical complaint. Dr. Newsom explained, and it was corroborated by Mr. Veal at trial, that his notes were not complete because Mr. Veal was a "poor historian." Since Mr. Veal had difficulty recalling dates, times and names, Dr. Newsom "pieced" together a majority of the information about Mr. Veal's previous accidents from other doctors' records.
[3] The hip flexors are what connect the lumbar spine to the legs.