544 So.2d 710 (1989)
Joseph C. COLOMB, Plaintiff-Appellee,
v.
FRITO-LAY, INC., et al., Defendants-Appellants.
No. 88-166.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*711 Thomas DeJean, Opelousas, for plaintiff-appellee.
Allen, Gooch, Marjorie O'Connor, Lafayette, for defendants-appellants.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
STOKER, Judge.
This is a worker's compensation case. Plaintiff, Joseph C. Colomb, submitted a claim to the Office of Worker's Compensation (OWC) for recovery of worker's compensation benefits for an injury he allegedly sustained in a work-related accident. The OWC denied the claim on the basis that plaintiff's injuries were not work-related. Plaintiff rejected the OWC's recommendation and filed suit against defendants, Frito-Lay, Inc. and its insurer, National Union Fire Insurance Company. The trial court held in favor of plaintiff and awarded him supplemental earnings benefits, medical expenses, penalties and attorney's fees of $7,500.
Defendants appeal the trial court's judgment. Defendants-appellants contend the trial court erred in awarding supplemental earnings benefits, penalties and attorney's fees to plaintiff. Defendants also contend the trial court erred in awarding medical expenses incurred after September 15, 1987. Plaintiff has answered the appeal asking for an additional $2,500 for attorney's fees.

FACTS
On Thursday, January 23, 1986, plaintiff allegedly sustained an injury to his lower back while unloading a truck at the Frito-Lay warehouse in Carencro, Louisiana within the course and scope of his employment as a warehouseman for Frito-Lay, Inc. Plaintiff claims that he twisted his back while steering two pallets loaded with bean dip down a ramp with a handjack. Plaintiff claims he lost control of the handjack while guiding it down the ramp and felt a pull in his back which he believed at the time to be only a pulled muscle. However, back pain started immediately after he turned the corner with the load. There were no witnesses to the accident.
Plaintiff did not mention his injury to anyone at the time but continued to do paperwork. On Friday plaintiff allegedly mentioned the accident to a temporary worker. Plaintiff worked all day Friday, stayed in bed Saturday, then went to a hospital emergency room on Sunday where he was given an injection and a couple of pills. After leaving the hospital Sunday, plaintiff told Reverend Toussaint, plaintiff's supervisor, that the doctor had advised him not to return to work and to check with a specialist. Plaintiff did not return to work on Monday. He reported the accident to the main office in Baton Rouge about a week later. A month after the accident plaintiff met with Toussaint and the area manager, Beard, and an accident report was filled out.
Reverend Toussaint confirmed that plaintiff visited him on Sunday, January 25, and *712 told him that he had hurt his back at work Thursday although he did not explain how. Plaintiff gave him the hospital report which Toussaint testified he gave to Beard a week later. Toussaint was told that plaintiff had been advised not to return to work and he accepted plaintiff's warehouse keys. Toussaint recalled the meeting with plaintiff and Beard at which the accident report was filled out.
Ray Tregre, the claims adjuster who handled plaintiff's claim, testified that he denied plaintiff's benefits because, according to him, Toussaint told him that plaintiff never reported the accident to him and the accident was never reported to Beard.
Plaintiff has consulted six doctors and chiropractors and was still receiving treatment at the time of trial. Defendants refused to pay plaintiff's medical bills or compensation benefits. In September 1987 defendants paid Dr. Butaud to examine plaintiff. From findings in one examination Dr. Butaud diagnosed plaintiff as fit to return to work in October 1987.

OPINION

COMPENSATION BENEFITS
Defendants contend on appeal that the trial court erred in awarding plaintiff supplemental earnings benefits because plaintiff failed to prove a causal connection between his injuries and his alleged work-related accident.
This court set forth the applicable law for plaintiff's burden of proof in Provost v. Transportation Ins. Co., 524 So.2d 800 (La.App. 3d Cir.1988):
"In a workman's compensation case the elements of proof that a plaintiff must establish at trial are: that he sustained a personal injury by an accident arising out of the course and scope of his employment; that he was or is disabled; and that his disability was causally related to the injury he received in the job-related accident. Bateman v. Power Rig Rental Tool Co., 453 So.2d 998 (La.App. 3d Cir.1984). This court recently discussed this burden of proof in Narcisse v. Employers Ins. of Wausau, 510 So.2d 1328 (La.App. 3d Cir.1987):
"`It is settled jurisprudence that the worker's compensation claimant has the burden of proving by a preponderance of the evidence that his disability is causally related to an accident that occurred during the course and scope of his employment. Prim vs. City of Shreveport, 297 So.2d 421 (La.1974); Stuckey vs. Home Insurance Co., 433 So.2d 776 (La.App. 3d Cir.1983), writ denied, 435 So.2d 450 (La.1983). The testimony of a claimant alone may be sufficient to prove the occurrence of a work-related accident, if such testimony is plausible, consistent, is supported by other circumstances appearing from the record and if there is nothing to discredit his account thereof. However, where the plaintiff's testimony is the sole evidence, it must be clear and convincing. Crochet vs. American Tobacco Co., 407 So.2d 1330 (La.App. 3d Cir.1981); Soileau vs. Bituminous Cas. Corp., 348 So.2d 1313 (La.App. 3d Cir. 1977); White vs. Freeport Chemical Company, 319 So.2d 563 (La.App. 4th Cir.1975), writ denied, 323 So.2d 132 (La. 1975). In evaluating the evidence, the Court should accept as true and uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances casting suspicion on the reliability of this testimony. Fourroux vs. North-West Ins. Co., 462 So.2d 1327 (La.App. 3d Cir.1985) [writ denied, 465 So.2d 739 (La.1985)] and the cases cited therein.'"

* * * * * *
"We do not find manifest error in the trial court's findings. Where there is a conflict in testimony, the trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, because of the trial court's better capacity to evaluate live witnesses and the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716 (La.1973)."
In the case before us, plaintiff was the sole witness to his accident. However, his *713 testimony is supported by the fact of his hospital visit two days later for a back injury, which is corroborated by the hospital report, and by the fact that he reported the injury to his supervisor the day he went to the hospital. Toussaint's testimony corroborated plaintiff's. The only contradictory testimony offered by defendants was that of the claims adjuster. The trial court clearly found the testimony of plaintiff and Reverend Toussaint more credible than that of Tregre. Defendants have not carried their burden of proving circumstances that cast suspicion on the reliability of plaintiff's testimony. The trial court was not clearly wrong in its evaluations of credibility and inferences of fact. See Provost, supra.
Defendants also contend that the trial court erred in finding plaintiff was entitled to supplemental earnings benefits after July 16, 1986, the day of plaintiff's last visit to Dr. Ortego, a chiropractor. Defendants claim that, since plaintiff failed to cooperate with Dr. Ortego and Dr. Wilson in his treatment, he cannot recover compensation benefits beyond the period that would have been necessary for his recovery had he properly cooperated. See Simmons v. State, La. Health & Human Resources Admin., 502 So.2d 187 (La.App. 3d Cir.), writ denied, 503 So.2d 1017 (1987).
The contention that plaintiff failed to cooperate with his doctors and thereby retarded and prolonged his recovery beyond July 16, 1986 is not supported by the testimony of Dr. Ortego and Dr. Wilson. Dr. Ortego testified as to the efficacy of his treatments and his prognosis at the time for plaintiff's recovery as follows:
"Q. Did you have any opinion as to whether treatments were helping Mr. Colomb?
A. Uhmy treatments did not seem to give Mr. Colomb any relief. Nothing more than temporary relief.
Q. Was Mr. Colomb diligent in returning for his treatments and carrying out your recommendations?
A. I don't particularlyas far as recommendations were concerned, he washe was given things like lumbar sacral supports, umm on 6-30-86, he was given exercises to do, and he was instructed on certain home remedies, certain lifting instructions and limitations. I have no way to say whether he was cooperative as far asyou know, I couldn't monitor what he did away from my office.
In my opinion, he was not very cooperative as far as keeping his appointments. Mr. Colomb didn't come in as often as I would've liked him to.
Q. Doctor, is it your opinion that Mr. Colomb's failure to keep his appointments as you expected retarded his progress?
A. I know that it definitelyit didn't give us a fair chance, I'll put it that way.
Q Do you feel that his lack of returning to your office for treatment would require him to seek medical treatment on a longer period of time?
A. UmmI feel like I'm not a Medical Expert, and probably couldn't form an opinion, as far as for that. Basically, you know, my opinion that is I can'tI can never guarantee a patient results, but I felt that if we were to have a chance to get Mr. Colomb relief for the condition he was suffering from, that if he were in my office would've been in my office on a more regular basis, or not have discontinued treatment for whatever reason it might've beenthat we would've haveuh we would've had a chance to help him with his condition.
Q. When you last saw Mr. Colomb, on July 16th, 1986, at that time did you have an opinion as to whether if he had continued treatment with you on a regular basis, when he ummcould have returned to work?
A. Notnot to my recollection,not ofI don't have any notation as *714 touhon that visit as to the prognosis of when he would've been able to return to work. No ma'am.
Q. At the time that you treated Mr. Colomb, during that one-month period, was it your opinion that he was not able to return to work?
A. Yes, ma'am."
Dr. Ortego's testimony does not indicate that plaintiff could have recovered by July 16, 1986.
Dr. Wilson, a chiropractor, treated plaintiff from March 23, 1987 through the time of trial. Dr. Wilson testified as to plaintiff's cooperation in his treatments and his opinion of plaintiff's condition as follows:
"Q. Doctor, now you began seeing him in March of '87, and you're seeing him today in fact?
A. Yes.
Q. And on what basis are you seeing him,oris that once a dayI mean, once a week, or twice a week, oror how has it been, more or less, over the last four, five, six months?
A. Approximately once a week. There were some spans of time on there, I believe, when Mr. Colomb told me thatwell, we had one period of time like four weeks, but it wasI think he said he hadthat was not my recommendation. He had some problem with transportation. I would say an average of once a week for the past two months.
Q. All right. And during that time, if I were to tell you that his job duties entailed him bending and stooping and lifting objects that may weigh from 20 to 50 pounds, and even more,was he a candidate to return to that kind of work during the time that you saw him, from March until today?
A. I would say not.
Q. Has Mr. Colomb come to receive his treatments on a regular basis as scheduled, or has his appearance for treatments been erratic over the lastyour treatment of him.
A. From March 23rd until June 2nd, they were very regular.
Q. That's 1987, Doctor?
A. Yes1987.
Q. Okay. After June 2, 1987?
A. There was a period of time there when I saw him only once or twice in the month, and then there was another period oflike three weeks when I didn't see him, and then in August and September, the visits have been more regular. There've been a few that's been missed.
Q. Has Mr. Colomb improved at all with the treatments, Doctor?
A. Yes. I would say improvement that has been noted significantly would be since the last of July."
There is no evidence to support defendants' contention that plaintiff could have recovered by July 16, 1986. The trial court did not clearly abuse its discretion in finding that plaintiff is entitled to compensation benefits after July 16, 1986.
In the alternative, defendants contend the trial court erred in ignoring Dr. Butaud's testimony and finding plaintiff was injured and disabled after September 15, 1987. The trial judge expressed the following opinion of Dr. Butaud's testimony in his written Reasons for Judgment:
"All of the doctors and chiropractors, except Dr. Butaud, are in agreement that plaintiff is hurt as a result of his accident.
"Attached hereto is an Appendix of a synopsis of the dates of treatment and observations of Dr. White, the treating physician. Included therein, as defendant's exhibits, are the reports of Dr. Domingue, a Neurologist.
"The dissent is by Dr. Butaud, an Orthopedist, who examined plaintiff once on September 15, 1987, more than one year post injury. He thinks there is nothing wrong with plaintiff and that he can go back to work.
"Note page 14 of his deposition (D-2):
*715 "A. Well, not only has a Cat scan and an EMG been done, but also, a physical exam by me, which, I feel I can pick up a disc probably ninety-five percent (95%) of the time, if you know, I have a patient that has a ruptured disc, you know. I mean there's some that we don't get, but if there's a neurological deficit, you know, we should pick it up. And you've had a neurologist evaluate him that didn't pick up anything. Now, I examined him. I didn't see any evidence of any disc pathology on exam, CAT scan, or nerve tests, and, you know, the only other thing to do is start doing invasive procedures, a myelogram, and I wouldn't suggest that at this point in time, to be honest with you.
Q. I mean, you can do that on one visit, and you feel confident
A. You, pretty much, can pick up a disc. If a patient's got a ruptured disc, you should be able to pick it up.
"After listening to `disc' and `nerve root' depositions and testimony for fifteen years on the bench, and reading many, many Higher Court decisions before and since, this Court simply cannot accept the doctor's assertion he can pick up a disc 95% of the time on a one-time evaluation for an insurance company."
Where there is a conflict in testimony, the trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review because of the trial court's better capacity to evaluate live witnesses and the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Provost, supra. Also, the treating physician's testimony will ordinarily be given more weight than that of a doctor who examined a plaintiff for diagnosis only. Sepulvado v. Willamette Industries, 459 So.2d 1342 (La.App. 3d Cir.1984). The trial court clearly did not find Dr. Butaud's findings as credible as those of the other doctors. We cannot say that the trial court's evaluations of credibility and inferences of fact are clearly wrong.

PENALTIES AND ATTORNEY'S FEES
Defendants further contend that plaintiff has failed to prove arbitrary and capricious behavior on the part of defendants which would entitle him to penalties and attorney's fees under LSA-R.S. 23:1201 and 23:1201.2.
The lower court's decision on penalties and attorney's fees is essentially a question of fact and should not be reversed unless clearly wrong. Savant v. Employers National Ins. Co., 502 So.2d 176 (La. App. 3d Cir.1987), and cases cited therein. See also, Fontenot v. Citgo Petroleum Corp., 529 So.2d 69 (La.App. 3d Cir.1988). The test for whether a claimant is entitled to statutory penalties and attorney's fees was analyzed in Chelette v. American Guar. & Liability Ins., Inc., 480 So.2d 363 (La.App. 3d Cir.1985). The court concluded that the following test is applicable: given the facts, medical and otherwise, known to the employer or his insurer, did the employer have a reasonable basis to believe that medical expenses and compensation benefits were not due to the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. See also, Fontenot v. Citgo Petroleum Corp., supra.
In this case, plaintiff suffered an injury on January 23, 1986, for which he sought medical attention on January 26. He also notified his supervisor on January 26. The area manager was notified about a week later and an accident report was filled out by plaintiff, his supervisor and the area manager a month after the accident. Plaintiff also reported the accident to the main company office in Baton Rouge a week after the accident. At some later point plaintiff brought further medical reports to the area manager. Dr. Butaud was hired by defendants to examine plaintiff in September 1987, over one year after the accident was reported and a written report filled out. No compensation benefits *716 were paid to plaintiff prior to September 1987 or prior to trial.
Ray Tregre, the claims adjuster, testified that he denied plaintiff's claim because Toussaint allegedly denied that plaintiff reported the accident to him and Beard allegedly denied that the accident was ever reported to him. The trial court did not find Tregre's testimony credible. Moreover, these reasons are an insufficient basis for denial of plaintiff's claim under LSA-R.S. 23:1201 and 23:1201.2 because they do not reasonably contravert plaintiff's claim with factual and medical information. Defendants did not seek Dr. Butaud's medical opinion until over a year after the accident was reported. The only factual and medical information timely before defendants was favorable to plaintiff's claim. Therefore, the award of penalties and attorney's fees was proper.
Defendants argue that plaintiff failed to provide proof of his injury to them because the doctors' reports were inconclusive as to the cause of his pain. However, the doctors found objective symptoms of plaintiff's back injury and disability. Dr. White, a medical doctor in family practice, found that plaintiff had a low back syndrome, probably related to a myo-fascial strain. Dr. Domingue, also a medical doctor, confirmed Dr. White's diagnosis. Dr. Ortego, a chiropractor, diagnosed plaintiff as having a post-traumatic lumbar facet syndrome. Dr. Wilson, a chiropractor, diagnosed a lumbar plexus disorder and a cervical cranial disorder in plaintiff. Therefore, the medical reports as to the fact of plaintiff's back injury were not inconclusive.
Defendants also contend that plaintiff failed to establish the date of receipt of written notification of the accident. However, plaintiff and Toussaint both testified that an accident report was filled out with the area manager a month after the accident. The trial court found their testimony credible.
Defendants point out that the OWC rejected plaintiff's claim on the basis that it was not a work-related accident. This contention lacks merit. The advisory opinion does not carry any presumption of correctness as to facts or the law, even when it has been admitted into evidence. Fontenot v. Citgo Petroleum Corp, supra.

MEDICAL EXPENSES
Defendants allege that plaintiff's petition does not make a claim for medical expenses. However, the petition does pray for any other relief to which plaintiff is entitled. Moreover, evidence of plaintiff's medical expenses was proffered into evidence.
Defendants objected at trial to introduction of plaintiff's medical bills, upon introduction of the second bill, on the grounds that they were not filed pretrial. Defendants later amended their objection to apply only to any medical bills incurred after September 15, 1987. The trial court accepted on proffer the medical bills introduced after the first one, in the event that they were not filed pretrial.
We find that plaintiff did include the medical bills on his pretrial list of exhibits. At the May pretrial conference, the trial judge ordered plaintiff to file all medical bills he intended to use at trial within one month. Plaintiff's attorney failed to comply with this order and subsequently withdrew from the case in August. Plaintiff was represented by a court-appointed attorney at his trial in September.
Defendants were placed on notice as to plaintiff's intent to use his medical bills at trial. It would be unfair to now deny plaintiff compensation for medical expenses because of his prior attorney's failure to file the medical bills pretrial. We have already affirmed the trial court's finding that plaintiff was injured after September 15, 1987. Therefore, the award of medical expenses was proper.

ANSWER TO APPEAL
In answer to the appeal, plaintiff prays for an additional $2,500 attorney's fees. After reviewing the record and briefs, we are of the opinion that $500 is an adequate award of attorney's fees for services rendered by plaintiff's attorney on appeal. *717 See Fontenot v. Citgo Petroleum Corp., supra.

DECREE
For the reasons given, the judgment of the trial court is affirmed and amended to include an award of attorney's fees of $500 for services rendered by plaintiff's attorney on appeal. In all other respects the judgment of the trial court is affirmed. All costs of this appeal are to be paid by defendants-appellants.
AFFIRMED AS AMENDED.