643 So.2d 196 (1994)
Leonard J. GUILLORY, Plaintiff-Appellee,
v.
CITY OF CROWLEY, Defendant-Appellant.
No. 93-1060.
Court of Appeal of Louisiana, Third Circuit.
August 31, 1994.
*197 John Franklin Craton, Crowley, for Leonard J. Guillory.
John Fayne Wilkes, III, Lafayette, for City of Crowley.
Before KNOLL, COOKS and WOODARD, JJ.
COOKS, Judge.
The City of Crowley, through the Office of Risk Management, appeals an administrative hearing officer's judgment reinstating temporary total disability benefits to Leonard Guillory; and, ordering it to pay him medical expenses for arthroscopic surgery and penalties and attorney fees. In answer, Guillory challenges the hearing officer's finding that his low back pain is not work related. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Leonard Guillory was employed by the City of Crowley Police Department. On January 29, 1990, he was guarding several Department of Correction prisoners assigned to work at the Veterans of Foreign Wars Hall when he tripped on a stack of extension cords laying on the floor, landing on his right knee. Guillory reported the accident and completed his work duties that day. The following day, however, Guillory advised the job supervisor that he was experiencing pain; and he needed to visit a doctor. At the employer's behest, Guillory was examined by Dr. T.L. McNeely, a general practitioner. *198 Dr. McNeely diagnosed Guillory's condition as a contusion and released him to resume light work the same day. After two follow-up visits, Dr. McNeely referred Guillory to Dr. Gregory Gidman, an orthopedic surgeon, for further evaluation.
Dr. Gidman examined Guillory on February 7, 1990 and ordered x-rays. The x-rays were normal; and Dr. Gidman diagnosed Guillory's condition as traumatic chondromalacia. When the doctor recommended steroid injections to reduce Guillory's knee discomfort, he allegedly refused the procedure because he was terrified of needles. Dr. Gidman then advised him to continue taking the oral non-steroidal anti-inflammatory medication prescribed by Dr. McNeely and to continue supporting his weight by using crutches. Dr. Gidman also ordered physical therapy.
On February 14, 1990, Dr. Gidman again recommended steroid injections because the oral medication and physical therapy were not alleviating Guillory's discomfort. Again, he refused the injections. During the course of a February 28, 1990 visit, Dr. Gidman noted Guillory's symptoms were disproportionate to the nature of his injury; and he directed Guillory to return to Dr. McNeely's office for further evaluation. Explaining Dr. Gidman's refusal to examine him further, Guillory testified the "doctor/patient relationship" existing between he and Dr. Gidman deteriorated because he inquired about the "cause of his pain," which seemed to irritate the physician. Before allowing the doctor to administer injections of steroid in his knee, Guillory stated he just wanted to know the cause of his condition and whether the injections would provide him lasting relief.
Later, Guillory was referred to Dr. Thomas Butaud, an orthopedic surgeon, by Lori Stockstill (a claims representative in the Office of Risk Management). Dr. Butaud also concluded Guillory's x-rays were normal; and he too could not determine the exact cause of Guillory's continuing pain. He recommended a bone scan, a MRI; and, if Guillory's pain persisted, an arthroscopic exam.
Next, Guillory selected Dr. John Cobb (an orthopedic surgeon) to examine him. On his initial visit, Guillory reported for the first time he was experiencing low back pain in addition to the knee pain previously disclosed to doctors Gidman and Butaud. Dr. Cobb suggested an arthroscopic exam of Guillory's knee and a MRI of his back. The MRI revealed moderate degenerative changes at "L4-5 with compression of both L5 nerves." Dr. Cobb diagnosed Guillory's back condition as symptomatic lumbar spondylosis and symptomatic herniation at L4-5. He recommended the performance of a discogram and suggested that an automated percutaneous diskectomy might partially relieve Guillory's back discomfort. Dr. Cobb also recommended an arthroscopic exam of Guillory's knee. His recommendations were transmitted to the employer by letter.
Responding, Stockstill informed Dr. Cobb in May 1990 that Risk Management would not provide coverage for Guillory's back treatment because she had not received notice of a work related back injury prior to Dr. Cobb's April report. Further, she noted "degenerative back changes" were deleted as a "covered condition" by amendment to the Worker's Compensation Act.
On July 6, 1990, Stockstill sent Dr. Cobb authorization to perform only arthroscopic surgery on Guillory's right knee. However, a few days before his surgery, Guillory canceled the procedure because he became apprehensive about the use of anesthesia after he learned that his father died as a result of anesthesia administered during surgery. As an alternative to general anesthesia, Dr. Cobb suggested to Guillory that an epidural would suffice to eliminate the discomfort associated with surgery.
During a follow-up visit on April 24, 1991, Guillory disclosed to Dr. Cobb that he was involved in an intervening automobile accident on October 28, 1990. Describing the accident, Guillory stated his vehicle was rear-ended; and, immediately thereafter, he felt back pain. Because the MRI results on file were obtained more than a year earlier, Dr. Cobb recommended another MRI.
In an effort to determine whether arthroscopic surgery on Guillory's knee was still medically warranted, Stockstill explained she referred Guillory to Dr. Clifton Shepherd, *199 Jr., an orthopedic surgeon, for independent testing and evaluation on June 18, 1991. In his report, Dr. Shepherd stated he could not find "anything wrong" with Guillory's knee; and he suggested the performance of a bone scan to further evaluate his condition. Following Guillory's second visit on July 17, 1991, Dr. Shepherd noted that he walked with a theatrical limp; he refused the recommended bone scan; and his strength test evidenced some inconsistency. He released Guillory from further medical care. Based on Dr. Shepherd's report and findings, the employer terminated the payment of all benefits to Guillory on July 17, 1991. Guillory filed a claim seeking reinstatement of worker's compensation benefits.
On February 19, 1992 the hearing officer ordered Guillory to submit to an independent medical examination by Dr. Charles Olivier, an orthopedic surgeon. Dr. Olivier concluded Guillory's medial meniscus may have been torn during the work accident; and he recommended arthroscopic surgery, as previously suggested by Dr. Cobb and Dr. Butaud. He also noted degenerative changes in Guillory's back at L4-5 and L5-S1 regions; and, he recommended epidural steroid injections to ease his pain. If this course of treatment proved unsuccessful, Dr. Olivier stated he would recommend the performance of a myelogram and CAT scan to further evaluate Guillory's condition. If the results of these later tests are positive, he would recommend that Guillory undergo an automated percutaneous diskectomy, which might provide greater pain relief to him.
The administrative hearing officer found Guillory's knee injury was work related but his back injury was not. Benefits were reinstated retroactively; and, the employer was ordered to pay Guillory's medical expenses for arthroscopic surgery. The judgment further provided if Guillory refused to undergo surgery, the employer shall submit a certificate from his treating physician attesting to the refusal before terminating benefits. In addition, the judgment ordered the employer to pay a twelve percent penalty and attorney fees of thirty-five hundred dollars ($3,500.00) for its failure to obtain court approval prior to terminating benefit payments to Guillory.

DISCUSSION

A.

The Employer's Contentions
The hearing officer erred in reinstating benefits to Guillory, contends the employer, because there is no objective evidence to substantiate his claimed disability.
A claimant has the initial burden of proving by a preponderance of the evidence that his or her disability is causally related to a work accident. Colomb v. Frito-Lay, Inc., 544 So.2d 710 (La.App.3d Cir.1989). The trial court's determinations as to whether the employee's testimony is credible and whether he carried his or her burden of proof are factual determinations that should not be disturbed on review unless clearly wrong or manifestly erroneous. Bruno v. Harbet Int'l. Inc., 593 So.2d 357 (La.1992). The manifest error/clearly wrong standard of appellate review applies in a worker's compensation action even when the trial court's decision is based solely upon written report, records or depositions. Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987). Ordinarily, a determination that a claimant is temporarily totally disabled is not to be disturbed on appeal if it is based upon reasonable evaluations of credibility and there is evidence before the trier of fact which furnishes a reasonable factual basis for such a finding. Lewis v. Malone & Hyde, Inc., 626 So.2d 531 (La.App.3d Cir.1993). Furthermore, as a general rule, the testimony of a treating physician should be given more weight than that of a physician who examined a claimant for diagnostic purposes. The positive findings of medical experts are to be afforded greater weight than the negative findings as to the existence of a particular condition. Lewis, supra.
Dr. Shepherd stated that he could not find "anything wrong" with Guillory's knee and doubted that he had an injury. Following a second visit, Dr. Shepherd concluded Guillory was able to return to work. However, Dr. Cobb (his treating physician), Dr. Olivier (the court appointed independent medical examiner), and Dr. Butaud (who examined *200 Guillory at the employer's behest) all concluded arthroscopic surgery was necessary to determine the cause of Guillory's pain. Reviewing the record, we cannot say the hearing officer's factual finding on the disability issue was clearly wrong. Accordingly, we must affirm the judgment reinstating benefit payments to Guillory from the date of termination.
The employer also argues penalties and attorney fees should not have been awarded under the circumstances. The employer contends Guillory's alleged refusal to submit to recommended medical treatment justified its later refusal to pay any further benefits. Countering, Guillory asserts the employer revoked its approval for the arthroscopic surgery. His initial reluctance to undergo this surgical procedure, he contends, did not justify the employer's ultimate refusal to pay for it. It was the employer's refusal to pay medical benefits, according to Guillory, which stalled his progress and recovery. Guillory testified he did not refuse arthroscopic surgery. He only expressed some concerns about the use of general anesthesia. Dr. Cobb confirmed Guillory did not refuse surgery. He further noted there were some administrative problems regarding Guillory's claim; and he was awaiting resolution of the problems before rescheduling the surgery.
Even if Guillory refused to submit to surgery, an employer cannot unilaterally terminate compensation benefits. It is for the courts to decide whether such refusal is reasonable. See LSA-R.S. 23:1221(4)(r)(iii); Bass v. Service Pipe Trucking, Inc., 289 So.2d 78 (La.1974); Wiley v. Southern Casualty Ins. Co., 380 So.2d 214 (La.App.3d Cir. 1980); Desormeaux v. American Mutual Liability Ins. Co., 224 So.2d 198 (La.App.3d Cir.1969). The cases cited by the employer in support of its justification argument are distinguishable. In Champagne v. Martin Mills, Inc., 607 So.2d 992 (La.App.3d Cir. 1992) and Simmons v. State, Through Health and Human Resources Administration, 502 So.2d 187 (La.App.3d Cir.1987), writ denied, 503 So.2d 1017 (La.1987), the claimants failed to lose weight, which retarded their recovery and prolonged their disability. This court held that the claimants could not receive compensation beyond the period that would have been necessary for their recovery had they cooperated in their treatment by losing weight. The cases relied upon by the employer do not involve invasive surgical procedures. An employer who terminates compensation benefits without a judicial determination of the reasonableness of the employee's refusal to accept surgery is liable for penalties. See Wiley, supra. Therefore, we must affirm the hearing officer's award of penalties and attorney fees.

B.

The Employee's Contention
Guillory contends the hearing officer erred in finding his back injury was not work related. The hearing officer's conclusion was based, in part, on Guillory's failure to report his back pain to Stockstill; the physicians' finding that the back condition was degenerative in nature; Guillory's medical records which revealed he was involved in several prior work accidents; and his involvement in a rear-end automobile collision after the work accident.
Guillory insists he informed Stockstill of his back pain but she turned off the tape recorder while interviewing him. He also contends he told Dr. Gidman about his back pain but the doctor did not examine his back. Guillory stated he associated his initial pain with a "toothache" not realizing it was back pain until his back started sweating when he used the crutches allegedly recommended by Gidman. Guillory's account of his back pain onset strains imagination. Further, Dr. Gidman testified he did not prescribe the crutches Guillory was using when first examined by him. While Dr. Cobb did relate Guillory's back pain to the work accident, he acknowledged it was atypical for such pain to manifest two and one-half months after the work accident.
The record contains a wealth of other evidence questioning Guillory's credibility. The employer presented proof that Guillory filed several prior claims for back injuries; he pulled a muscle while at work in 1980; he injured his back in an automobile accident in November 1981; he slipped and fell in a *201 Winn Dixie store in September 1983; he had an accident at an A & P store in April 1984; he was in an automobile accident in May 1988; and he waited nearly six months before reporting to Dr. Cobb that he was involved in an automobile collision after the work accident. Guillory obviously exaggerated the extent of his disability even during his trial testimony claiming his back pain is "so bad" that he has to crawl around for weeks at a time. He maintained this position despite the employer's evidence showing he could perform most of his normal daily activities at home.
After carefully considering the evidence presented, we again cannot say the hearing officer was clearly wrong in concluding Guillory failed to establish by a preponderance of the evidence that his back pain was work related.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is affirmed. Costs are assessed to defendant.
AFFIRMED.
KNOLL, J., concurs in the results.