IzCANNELLA, Judge.
Plaintiff, DePaul Hospital (DePaul), and defendant, Lucille Every (Every), appeal a workers’ compensation judgment which awards Supplemental Earnings Benefits (SEB) to Every. We affirm the finding that Every is entitled to SEB, but we vacate the award, reinstate benefits and remand.
Every injured her back in 1990 while lifting laundry in the course and scope of her employment with DePaul. Based on wages of $187.60 per week, she received temporary total disability benefits in the amount of $122.06. On July 29, 1994, DePaul filed a Petition to Modify the Judgment, asserting that Every was no longer temporarily totally disabled. Trial was held on July 26,1995. A judgment was rendered on September 19, 1995, finding that Every was no longer totally disabled, but entitled to SEB. The hearing officer determined that Every was able to work four hours per day, five days per week and calculated her entitlement to be $95 per week, based on her average weekly wage of $187.60. On IgSeptember 25, 1995, Every filed an appeal. On September 26, 1995, DePaul filed a Motion to Amend the Judgment, asserting that the hearing officer incorrectly calculated the amount of weekly payments under La.R.S. 23:1221(3)(a). The hearing officer amended the judgment on *110 September 26, 1995 to award SEB in the amount of $68.40 per week, 66⅜ percent of the difference between her previous salary and $4.25 per hour (minimum wage) for four hours per day, five days per week. DePaul also filed an appeal.
Every asserts that the hearing officer erred in reducing her benefits from temporary total disability to SEB, in penalizing her for refusing to undergo a surgical procedure recommended by her treating physician, and in stating that she was evaluated by a rehabilitation counselor and accepting that counselor’s findings without submission of factual proof.
DePaul asserts that the amended judgment is not a substantive change and that the hearing officer erred in failing to award SEB from the date of maximum medical improvement or from the date of filing its petition for modification.
AMENDED JUDGMENT
Our review of the judgment shows that the amended judgment of September 26, 1995 was not a substantive change, but a correction of an error of calculation. La.C.C.P. art. 1951. Thus, we find that the amended judgment is valid.
ENTITLEMENT TO BENEFITS
Every asserts that the hearing officer erred in reducing her benefits from temporary total disability to SEB. She asserts that he was manifestly erroneous in finding that she could return to work for four hours a day, five days per week. She contends that she is temporarily totally disabled from any employment. Further, she contends that the hearing officer erred as a matter of law under SEB because DePaul failed to show that there was any employment available to her |4that she could perform with her restrictions.
La.R.S. 23:1221 provides for temporary total disability, permanent total disability, supplemental earnings benefits, permanent partial disability and a schedule of payments. It states in part:
See. 1221. Temporary total disability; permanent total disability; supplemental earnings benefits; permanent partial disability; schedule of payments
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability ...
(c) For purposes of Subparagraph (l)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (l)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee’s physical condition has improved to the point that continued, regular treatment by a physician is not required, or- six months after the injury, whichever first occurs. If the claimant contends that his disability is of a temporary nature, but extends beyond this six-month period, he must submit a claim for extension *111 of thelsperiod of temporary total disability under R.S. 23:1310.3.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability ...
(e) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment ...
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10)
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is Rnot engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region.
(ii) For purposes of Subparagraph (I) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
Every testified at trial that, in addition to workers’ compensation benefits, she was receiving monthly Social Security benefits of $217 plus Supplemental Social Security of $261. She stated that she has been seeing Dr. Bernard Manale, her orthopedic surgeon, since the accident. She also suffers from high blood pressure and arthritis. She testified that because of her pain due to the low back injury, she is unable to get out of bed, except for doctor visits. Her children help her at home with meals, baths and cleaning. Every stated that she discussed surgery with *112 Dr. Manale, but that he admitted the surgery was not a guarantee that she would be pain free. In addition, she objected to the surgery because, based on a prior surgical experience, in the event she would require blood infusion or transfusion, she does not trust the medical personnel to give her blood donated by members of her family. She testified that Dr. Manale never discussed releasing her to any type of employment, nor did he discuss her restrictions. She noted that she does not have a driver’s license, does not drive and takes medications that make her sleepy. She was willing for the hearing officer to declare her permanently and totally disabled and to allow DePaul the ^offset for Social Security. She asserted that she liked to work and would do so if . she could. Audrey Lewis, her sister, supported her assertions.
Every also testified that she was never provided any job leads nor told that there was a job that existed that she could do within her limitations. While she acknowledged one meeting with DePaul’s rehabilitation counselor, Corinne Gelpi, she stated that no mention was made of any potential jobs.
Dr. Manale testified that he diagnosed Every with lumbar sprain and sacroiliac arthritis on both sides. He stated that she was still under his care, that he had not discharged her and that he continued to find her totally disabled after each visit. He felt that she was clearly not a candidate for a full-time job. However, when pressed by the vocational rehabilitation counselor in a letter, he returned a form supplied by her stating that Every could work less than four hours per day. In testimony, he explained that he does not believe that she is necessarily capable of working four hours a day, five days per week. He stated that the extent of her capabilities have not been tested, even though he recommended that DePaul conduct a Functional Capacity Evaluation (FCE) for this purpose. He also suggested that DePaul send her to a physiatrist, a physical medicine specialist, to help her with home exercises. He noted that DePaul has not followed either suggestion.
Dr. Manale was unable to state that Every cannot work at all, because he noted that she was sitting in court. But, he does consider her to have a permanent physical impairment. He reluctantly said that she might be able to work one to two hours per week. He was unable to determine her work potential or capacity with assurance because of her lack of testing. Dr. Manale stated that she takes Vicodin (pain medication), Soma (muscle relaxant) and Elavil (sleeping medication), all of which can make her sleepy. She is unable to tolerate generic forms of the drugs. He also testified that there is no medical reason for her to be bedridden, but notes that the effects of the drugs could explain why she feels she | ghas to stay in bed.
Dr. Manale stated that Every has reached a plateau in her treatment. He noted that she will not get better without surgically fusing the sacroiliac joint on both sides of her spine. He stated that this consists of two major operations. Dr. Manale testified that he discussed surgery with Every, but that she is afraid. He said that the best he could offer her with surgery is that much, but not all, of the pain would go away.
 On appellate review of a factual determination, the reviewing court may not set aside the finding of fact made by the trier of fact in the absence of manifest error or unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Williams v. Hospital Service, Inc., 95-214 (La.App. 5 Cir. 9/20/95), 663 So.2d 749, 752. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether its conclusion was a reasonable one. Id.; Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
Refusal to undergo surgery
Every contends that the hearing officer penalized her for failing to have the recommended surgery. However, an employee’s unreasonable refusal to undergo surgery which might reasonably be expected to benefit the employee can subject the employ *113 ee to a loss of benefits. See: Guillory v. City of Crowley, 93-1060 (La.App. 3 Cir. 8/31/94), 643 So.2d 196, 200 and Bass v. Service Pipe Trucking Company, Inc., 289 So.2d 78, 80 (La.1974). In Bass, 289 So.2d at 80-81, the court stated:
The general criteria as to whether an employee’s refusal to submit to surgery is reasonable or not are, as set forth in Coiné v. Smith, 100 So.2d 902, 903 (La.App. 1st Cir.1958):
|91. Can it be reasonably assumed that the operation will relieve the situation and permit the claimant to resume the type of work he was performing at the time of the accident?
2. Will the operation submit the claimant to a minimum of danger and be in no sense dangerous to his life or be attended by no unusual risks and is it attended with but slight pain?
3. Is there no serious disagreement among the surgeons as to the necessity for the operation or the type of operation to be performed, and the probability that the disability will be cured without recurrence?’
This court has consistently held, or expressed approval of holdings, that an employee’s refusal to submit to the knee surgery (sic) here involved is not unreasonable, it being major surgery under general anesthesia with the consequent risks and it involving severe pain for at least a period immediately following the surgery ... We affirm these holdings.
Additionally, in determining whether an employee’s refusal to submit to surgery is unreasonable, the particular surrounding facts and circumstances in each ease should be taken into account. [Citations omitted]
In this case, although Dr. Manale stated that the surgery would relieve much of the pain suffered by Every, he testified that it is the equivalent of two major operations. Furthermore, the surgery will not fully cure the problem. Thus, under the Bass criteria, Every’s refusal to undergo the surgery is not unreasonable.
Proof for reduction of benefits
In this case, although Every testified that she could not work at all, Dr. Ma-nale weakly indicated that she could possibly perform some work. However, he qualified his statement in his letter to the rehabilitation counsel by his testimony at trial. At trial, Dr. Manale stated that Every needs a FCE to determine the extent of her disability. But, as of the date of trial, there has been no testing to determine the extent that Every can work. However, the evidence does not show that she can work four hours per day, five days per week, as found by the hearing officer. To the contrary, Dr. Manale stated that Every’s range of | mwork capabilities has not yet been determined. However, he unequivocally stated that she is permanently disabled from full-time work. In trial, Dr. Manale stated that she might be limited to working as few as one or two hours per week. Notably, in addition to the lack of testing of her abilities, the rehabilitation counselor has not seen her. No recommendations were submitted into evidence of her capabilities or available jobs within her restrictions and wages. Consequently, although DePaul satisfied its burden of proving that Every is neither permanently totally disabled nor temporarily totally disabled under R.S. 23:1221(1) or R.S. 23:1221(2), the evidence also shows that she is permanently disabled and is entitled to benefits under SEB. However, DePaul did not bear its burden under SEB showing how many hours Every can work, what type of job she can perform, or whether jobs are available to her with her physical restrictions. Without that evidence, the hearing officer could not calculate the correct amount of SEB that Every is entitled to receive. See: R.S. 23:1221(3)(a) and 23:1221(3)(e)(i). In addition, there may not be any jobs available for Every with her limited capabilities, in which case she would be totally disabled for purposes of SEB. Consequently, we find that the hearing officer was clearly wrong in finding that Every is able to work four hours per day, five days per week at minimum wage. Because she is entitled to SEB and the evidence was insufficient to determine the amount, we must remand for a determination of this issue.
*114 DePaul also asserts that it is entitled to a credit for the overpayments for temporary and total disability that it made to Every pending a hearing on the Motion for Modification. It contends that credits for these overpayments should be retroactive to the date on which Dr. Manale stated that Every reached maximum medical improvement or to the date that its petition for modification was filed. R.S. 28:1206 provides that:
Any voluntary payment or unearned wages paid by the
| nemployer or insurer either in money or otherwise, to the employee or dependent, and accepted by the employee, which were not due and payable when made, may be deducted from the payments to be made as compensation.
Dr. Manale responded to telephone conversations with Corinne Gelpi by a letter dated June 17, 1994, a copy of which was sent to DePaul. He stated that Every has reached maximum medical improvement. He recites his diagnosis and that she has a poor prognosis. Dr. Manale states that Every has a permanent physical impairment. He does not state that she is able to return to work. However, in a form dated the same day[1], Dr. Manale stated that she could work “less than 4” hours per day. Although Dr. Manale stated at trial that she could not work four hours per day and that he was not able to tell how many hours she could work, he testified that she probably could work within her restrictions. Since July 29,1994 is the date on which DePaul filed its petition for modification, we find that the overpayments should be calculated from July 29,1994.
Accordingly, the judgment of the hearing officer is hereby affirmed as to the reduction of benefits from temporary total disability to SEB. The judgment is amended to award credit to DePaul for overpayment of benefits from July 29, 1994. The judgment is otherwise vacated and the matter remanded for a hearing on the amount of SEB that Every is entitled to receive, based on proof of her work capabilities and availability. Benefits for temporary total disability are reinstated until SEB benefits are determined. DePaul is to pay costs of this appeal.
AFFIRMED IN-PART; VACATED IN PART AND REMANDED.

. This was referred to earlier in this opinion and was clarified by Dr. Manale at trial.